UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES EDWARD LINEBERGER, : | |
| : | |
| Petitioner, : | REPORT AND |
| : | RECOMMENDATION |
| - against - : | |
| : | 03 Civ. 1645 (KMW) (RLE) |
| JOHN T. CONWAY, Acting Superintendent, : | |
| : | |
| Respondent. : | |

To the HONORABLE KIMBA WOOD, U.S.D.J.:

## I. INTRODUCTION

*Pro se* petitioner, Charles Edward Lineberger ("Lineberger"), a New York state prisoner at Attica Correctional Facility, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was received by the *Pro Se* Office in this District on February 19, 2003. Lineberger was convicted in the Supreme Court, New York County, of robbery in the first degree under New York Penal Law ("N.Y.P.L.") § 160.15(3), criminal possession of a weapon in the fourth degree under N.Y.P.L. § 265.01(2), and criminal possession of stolen property in the fifth degree under N.Y.P.L. § 160.40. Petition under 28 U.S.C. § 2254 ("Pet.") ¶ 5. He was sentenced to a term of twenty years to life on the robbery charge and concurrent one-year terms on the other charges. Id. ¶ 4.

Lineberger originally raised thirteen claims in his habeas petition, *see* id. ¶ 13, but District Judge Kimba Wood found that seven of the claims had not been exhausted, and stayed the petition. *See* Docket No. 8 (Order, December 23, 2003). Rather than return to state court, Lineberger chose to abandon the unexhausted claims. *See* Docket No. 10 (Order, March 16, 2004). Lineberger contends that his incarceration violates the United States Constitution in that:

1) he was subjected to search and seizure violations; 2) he was subjected to Miranda [Miranda v. Arizona, 384 U.S. 436 (1966)] violations; 3) acts of the prosecutor at the trial constituted misconduct; 4) his guilt was not proven beyond a reasonable doubt because the evidence presented against him at trial was insufficient; 5) the police unconstitutionally failed to investigate whether another suspect committed the offense for which he was convicted; 6) his constitutional rights were violated when he was sentenced *in absentia*, and without counsel. Pet. at ¶ 13. For the reasons set forth below, I recommend that the petition be **DENIED**.

## II. BACKGROUND

A.     **Factual Background**

On July 26, 1997, at approximately 10:00 p.m., Neil Sawyer ("Sawyer"), a visitor from Tacoma, Washington, was in a livery cab parked at Fifth Avenue and 33rd Street in Manhattan, while the driver helped Sawyer's friend use a nearby ATM. Sandoval Hearing/Voir Dire/Trial Transcript ("Tr.") at 115, 151, 159. Lineberger opened the cab door, held a sharpened screwdriver to Sawyer's chest, warned him not to "do anything stupid," and demanded money. Id. at 160. When Sawyer told Lineberger that he had no money, Lineberger jabbed Sawyer with the screwdriver, leaving small puncture wounds in Sawyer's chest and hand, for which he was later treated at a hospital. Id. at 161. Fearful that he would be stabbed again, Sawyer reached into his backpack and handed Lineberger $286. Id. at 158, 163.

Lineberger fled on foot, and Sawyer chased after him, shouting that Lineberger had just robbed him. Id. at 164-66. Police Officer Mary Ellen Ferro, who was patrolling the Midtown South Precinct area, heard Sawyer's cries for help, and also saw Lineberger turn around and make a jabbing motion towards Sawyer as they were running. Id. at 114-116. Ferro spoke

2

briefly to Sawyer, who reported that Lineberger had just robbed him. Id. at 116-17, 167. While chasing Lineberger, Ferro radioed that a robbery had been committed and described the assailant as wearing a short-sleeved green t-shirt, long jean shorts, and white sneakers. Id. at 117-19.

Lineberger testified that he ran because he was on parole at the time and fearful of being stopped because he had "reefer" in his possession. Id. at 202. He ran around the block towards Fifth Avenue and 33rd Street, ducked behind several taxicabs, and jumped into the rear seat of one of them. Id. at 87-88, 203-04. Police Officers Larry McDonnell and Joseph Jones, responding to Ferro's radio transmission, apprehended Lineberger – who matched the description of the robber – and removed him from the cab, while Ferro looked on. Id. at 85-89, 121, 143-45. The officers handcuffed Lineberger and, in Ferro's presence, recovered $286 from his pocket, but no screwdriver. Id. at 89-90, 122-23, 146. Lineberger said that the money was his. Id. at 205-07. He claimed to have won approximately $700 at a numbers game earlier that day, and then spent some of his winnings on marijuana and other bets. Id. at 217-18. Shortly thereafter, Sawyer arrived and positively identified Lineberger as the person who had injured and robbed him. Id. at 122.

Lineberger stated he was not the person who robbed Sawyer, but that it must have been "Danny," a man Lineberger said he met a few weeks prior and who was with him playing numbers games in upper Manhattan. Id. at 195-96, 201-02, 220-22. According to Lineberger, Danny was stocky, had short hair, and darker skin. Id. at 212. Lineberger described Danny as wearing a dark green t-shirt and cut-off jeans. Id. at 196-97, 201, 212. He contends that he did not rob Sawyer with a screwdriver or any other way, and insisted that Danny was the culprit. Id. at 207-08.

3

Lineberger was convicted of robbery in the first degree, criminal possession of a weapon in the fourth degree and criminal possession of stolen property in the fifth degree, and was scheduled to be sentenced on February 3, 1998. Id. at 317-19, 322. At the sentencing hearing, he asked that his attorney be relieved and a new attorney assigned. Sentencing Hearing, March 19, 1998 at 4.[1] He also asked that the judge postpone the sentencing in order for him to proceed *pro se*. Id. at 3-4. The hearing was postponed, but Lineberger was not allowed to dismiss his attorney, and the judge ordered that the attorney continue to advise Lineberger at the sentencing. Id.

Lineberger was rescheduled to be sentenced on March 19, 1998. On that date, he refused to enter the courtroom. Id. at 2-3. His attorney, whom Lineberger insisted be dismissed, was present. Id. The court refused to allow Lineberger to be represented by a fourth attorney, but informed Lineberger that it would order his attorney to leave the courtroom and allow Lineberger to represent himself. Id. at 5-6, 8. Lineberger rejected this offer, and still refused to enter the courtroom. He remained in the holding area, saying that it was "no problem." Id. at 8-9. The court proceeded with the sentencing. Id. at 9

While the court was being advised on Lineberger's prior felony convictions, his attorney attempted to speak on his client's behalf . Id. at 11-12. The judge then relieved and excused counsel because Linebeger had unequivocally made known that he no longer wanted to be represented by his attorney. Id. at 12-13. The court sentenced Lineberger *in absentia* as a

---

[1] There is no transcript for the February 3, 1998 sentencing hearing. For the facts as represented here, the Court relies on the transcript for the March 19, 1998 sentencing hearing, the respondent's Memorandum in Opposition to Petitioner's Application for a Writ of Habeas Corpus, and the respondent's Declaration in Opposition to Petitioner's Application for a Writ of Habeas Corpus, Exhibits B, H, and I.

persistent violent felon for an indeterminate sentence of twenty years to life for the robbery count and one year, for each misdemeanor count to run concurrently. Id. at 14-15.

## B. Procedural Background

### 1. Direct Appeals

Lineberger appealed his conviction, which was affirmed by the Appellate Division on April 24, 2001. People v. Lineberger, 725 N.Y.S.2d 308 (App. Div. 1st Dep't 2001). On appeal, Lineberger raised four claims: 1) the police lacked probable cause to arrest him; 2) he was subjected to search and seizure violations; 3) his guilt was not proven beyond a reasonable doubt; and 4) he was entitled to a new sentencing because the court sentenced him *in absentia* without securing an intelligent waiver of counsel or a forfeiture of counsel. Declaration in Opposition to Petition for a Writ of Habeas Corpus, Michael P. King, June 30, 2003 ("King Decl."), Ex. A at i-ii. In rejecting his claims, the court found that probable cause was established, the verdict was based on legally sufficient evidence, and it was impossible to conduct a "searching inquiry" because Lineberger refused to appear in court, and the totality of his conduct constituted forfeiture on his part. Lineberger, 725 N.Y.S.2d at 309-10.

Leave to appeal to the New York Court of Appeals was granted on July 6, 2001. People v. Lineberger, 96 N.Y.2d 903 (2001). On appeal, Lineberger's counsel raised two claims: 1) that he was entitled to a new sentencing proceeding because the judge improperly sentenced him *in absentia*; and 2) the police did not have probable cause to arrest him. King Decl., Ex. G at i-ii. Lineberger also filed a *pro se* supplemental brief and raised four additional claims: 1) the police committed search and seizure violations; 2) the police committed Miranda violations; 3) there was prosecutorial misconduct; and 4) his guilt was not proven beyond a reasonable doubt. Id.,

Ex. H at i. The Court of Appeals rejected his claims. People v. Lineberger, 98 N.Y.2d 662 (2002). The Court paid particular attention to his *in absentia* claim, finding that the trial court was presented with an impossible choice when Lineberger refused to appear but also insisted on firing his third court-appointed attorney so he could represent himself. Id. at 662-63.

### 2. Writ of Error *Coram Nobis*

On September 24, 2002, Lineberger moved for a writ of error *coram nobis*. King Decl., Ex. L. He alleged that his appellate counsel had been ineffective for failing to raise certain issues. Id. On May 22, 2003, the Appellate Division denied Lineberger's application, and he did not appeal this decision. Id.

### III. DISCUSSION

**A.  Threshold Issues**

**1.  Timeliness**

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. *See* 28 U.S.C. § 2244(d)(1). A conviction becomes final "'when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s],'" that is, ninety days after the final determination by the state court. Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001) (*quoting* Ross v. Artuz, 150 F.3d 97, 98 (2d Cir. 1998)). The *Pro Se* Office received Lineberger's initial habeas petition on February 19, 2003, within one year of his conviction becoming final, and it is therefore timely.

## 2. Exhaustion

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may not grant a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); Picard v. Connor, 404 U.S. 270, 275 (1971); Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997). In order to satisfy substantive exhaustion, a petitioners's claim before the state courts must have been federal or constitutional in nature. Although not an exacting standard, a petitioner must inform the state courts of "both the factual and the legal premises of the claim [he] asserts in federal court." Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (*quoting* Daye v. Attorney Gen., 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)). Procedurally, a petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court. *See* Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994). A petitioner must raise a federal claim at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'" Id. (*quoting* Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990).

Lineberger properly submitted claims in both his direct appeal to the Appellate Division, and in his briefs, both by counsel and *pro se*, to the Court of Appeals. *See* King Decl., Ex. H. His claims were constitutional in nature and, thus, are exhausted and reviewable by this Court.

## B. Merits of the Claims

### 1. Standard of Review

The AEDPA constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state

court. The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see* Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### 2. Fourth Amendment Search and Seizure Violations

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 482 (1976); *see* Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991). In the Second Circuit, such claims can only be reviewed by federal courts "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (*citing* Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977)). In New York, procedures codified in New York Criminal Procedure Law §§ 710 *et seq*. (McKinney 1995 & Supp. 1999-2000) satisfy part (a) of

the test. *See* Gates, 568 F.2d at 837; Crispino v. Allard, 378 F. Supp. 2d 393, 413 (S.D.N.Y. 2005).

Lineberger availed himself of the New York State procedures for challenging the seizure of evidence. He filed a pretrial motion seeking the suppression of evidence, and received a full hearing on the matter on November 7, 1997. Lineberger also litigated his Fourth Amendment claim on direct appeal. "[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002). Consequently, Lineberger's Fourth Amendment claim is barred from habeas review, and this claim should be **DENIED**.

### 3. **Miranda Violations**

Miranda warnings are required "only when law enforcement agents interrogate a person who is in custody." United States v. Abney, 2003 WL 22047842, at *6 (S.D.N.Y Aug. 29, 2003); *see* United States v. Kirsh, 54 F.3d 1062, 1067 (2d Cir. 1995). The Fifth Amendment privilege protects an accused from being compelled to testify against himself or otherwise provide evidence of a "testimonial or communicative nature." Reid v. City of New York, 2004 WL 626228, at *12 (S.D.N.Y. Mar. 29, 2004) (*quoting* Scherer v. California, 384 U.S. 757, 761 (1966)).

Lineberger claims that the police officers violated his Fifth, Sixth, and Fourteenth Amendment rights because they failed to administer Miranda warnings at the time of his arrest.

In particular, he challenges two statements: 1) "It wasn't me, it was another guy. I'm not taking the rap;" and 2) "It's my money." King Decl., Ex. H at 12. Miranda applies if Lineberger was in custody at the time he made the statements.

A person is in custody when "there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Abney, 2003 WL 22047842 at *6 (*quoting* California v. Beheler, 463 U.S. 1121, 1125 (1983) (*per curiam*) (*internal citations omitted*)); *see also* Oregon v. Mathiason, 429 U.S. 492, 495 (1977). "[T]he test used in determining whether a defendant was in custody is an objective one that (a) asks whether a reasonable person would have understood herself to be subjected to restraints comparable to those associated with a formal arrest, and (b) focuses upon the presence or absence of affirmative indications that the defendant was not free to leave." Abney, 2003 WL 22047842 at *6 (*quoting* United States v. Kirsh, 54 F.3d 1062, 1067 (2d Cir. 1995) (*internal quotations omitted*). For the purposes of Miranda, "[a] person is in custody if 'a reasonable person in the suspect's shoes would not have felt free to leave under the circumstances,'" United States v. Lopez, 63 F. Supp. 2d 411, 412 (S.D.N.Y. 1999) (*quoting* United States v. Ali, 86 F.3d 275, 276 (2d Cir. 1996), and, "in the absence of an actual arrest, law enforcement officials act or speak in a manner that conveys the message that they would not permit the accused to leave." Ali, 86 F.3d at 276 (*internal citations omitted*).

Lineberger introduced the first statement at trial during cross-examination of Officer Jones and later verified the statement during his testimony on direct examination. Tr. at 107, 202. He offered the second statement while he was questioned on direct by his own attorney. Id. at 205. Miranda protects defendants by precluding the admission of certain statements. The fact

that defense counsel chose to introduce the statements, and Lineberger verified them, makes this claim moot.

Furthermore, Officer Ferro did not read Lineberger his Miranda rights because she did not have the opportunity to do so. Tr. at 128-29. Lineberger made the contested statements at the scene of the arrest and was not subject to custodial interrogation at the time. With respect to the first statement, Lineberger testified that he made the statement as Officer Ferro was crossing the street and was within five or six feet of him, before he "took off." Tr. at 202. As to his second statement, Lineberger admitted that he made the statement when the officer found the money in his pocket during the frisk. Tr. at 205. "[S]pontaneous statements which are not the result of 'official interrogation' have never been subject to [Miranda's] strictures." Wolfrath v. La Vallee, 576 F.2d 965, 973 n.6 (2d Cir. 1978) (*internal citations omitted*). Therefore, I recommend that this claim be **DENIED**.

### 4. Prosecutorial Misconduct at Trial

In order to prevail on his claim of prosecutorial misconduct, Lineberger must demonstrate that the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (*quoting* Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). A distinction must be made "between ordinary trial error of a prosecutor and [the] sort of egregious misconduct held . . . to amount to a denial of constitutional due process." Donnelly, 416 U.S. at 647-48; *see also* Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998). The reviewing court must determine whether the prosecutor's actions "were so prejudicial that they rendered the trial . . . fundamentally unfair."

Fox v. Mann, 71 F.3d 66, 72 (2d Cir. 1995) (*quoting* Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990)).

Lineberger contends that the prosecutor engaged in various forms of misconduct during trial. He alleges that the prosecutor violated rules of "courtroom decorum" in the manner in which she reacted to the court's rulings, failed to turn over Rosario material, allowed witnesses to commit perjury at both the grand jury proceedings and trial, and failed to inform the court of the wrongful testimony. King Decl., Ex. H at 13-20. Lineberger has failed to demonstrate that any of the prosecutor's actions denied him a fair trial.

### a. Court Decorum Claim

Lineberger argues that the prosecutor failed to "manifest an attitude of professional respect" by asking leading questions or questions that had been asked and answered. King Decl., Ex. H at 16. The court quickly sustained defense counsel's objections to the questions at issue, and the prosecutor moved on with her examination. Tr. at 164, 168, 170-71. Even if the prosecutor's questions were improper, any error was cured by the trial court, and does not constitute a denial of due process.

### b. Perjury Claim

Lineberger claims that the prosecutor allowed witnesses to commit perjury in the grand jury proceedings and that these witnesses adhered to their perjury at trial. King Decl., Ex. H at 17. Lineberger does not cite to the record or provide any factual basis for this claim, and provides no evidence that any of the witnesses' testimony was false. Even assuming there was false testimony, he failed to demonstrate that the prosecutor knew, or should have known, that

the testimony was false or that there was a reasonable probability that the false testimony could have impacted the jury's verdict. *See* Drake v. Portuondo, 321 F.3d 338, 344-45 (2d. Cir. 2003) (*citing* Napue v. Illinois, 360 U.S. 264 (1959)) (finding due process violation based on witness's false testimony where the prosecutor knew the testimony was false and there was a reasonable likelihood that the false testimony would impact the jury's verdict).

### c. Rosario Claim

In New York, a state prosecutor must disclose any statement of a witness whom the prosecution intends to call at the hearing or trial which is in the prosecutor's possession or control and relates to the subject matter of the witness's testimony. People v. Rosario, 9 N.Y.2d 286, 289 (1961). Lineberger claims that Rosario materials, specifically tapes, were concealed and kept "secret and confidential." King Decl., Ex. H at 17, 19. He argues that these tapes should have been played in open court. Rosario at 18. However, "[i]n conducting habeas review, a federal court is limited to determining whether a conviction violated the Constitution, laws, or treaties of the United States." Senor v. Greiner, 2002 WL 31102612, at *12 (E.D.N.Y. Sept. 12, 2002) (*citing* Estelle v. McGuire, 502 U.S. 62, 67 (1991)). "A federal court, therefore, cannot review a habeas claim based on an alleged Rosario violation because the Rosario rule is purely a matter of state law." Id.; *see* Green v. Artuz, 990 F. Supp. 267, 274-75 (S.D.N.Y. 1998). Lineberger's claim that the prosecutor failed to turn over Rosario material cannot be addressed by this court.

13

### 5. Challenge to the Sufficiency of the Evidence/Failure to Investigate

The question in a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (*emphasis in original*); *see also* Einaugler v. Supreme Court of State of New York, 109 F.3d 836, 839-40 (2d Cir. 1997). The petitioner bears a "heavy burden" in making this claim because the government receives the benefit of having all permissible inferences drawn in its favor. United States v. Martinez, 54 F.3d 1040, 1042 (2d Cir. 1995); *see also* United States. v. Sureff, 15 F.3d 225, 228 (2d Cir. 1994); United States v. Casamento, 887 F.2d 1141, 1156 (2d Cir. 1989).

Lineberger claims that the evidence presented against him was insufficient, and that the prosecution failed to prove his guilt beyond a reasonable doubt. The basis for Lineberger's argument is that he was mistaken for another person, the prosecution failed to investigate an alternate suspect, and the prosecution's use of photographs to identify him was improper and violated his due process rights. King Decl., Ex. H at 22-24. Here, the evidence was sufficient for a jury to conclude that Lineberger committed robbery in the first degree, criminal possession of a weapon in the fourth degree, and criminal possession of stolen property in the fifth degree. The evidence presented included eyewitness testimony of the victim, Sawyer, and photographs of his injuries. Tr. at 168-72. The jury also heard the police officers' accounts of the chase and their recovery of the money from Lineberger. Id. at 85-89, 116-17, 121-23, 143-45.

Lineberger asserts that the police failed to investigate the man whom he claims committed the robbery, Danny Smile. King Decl. Ex. H at 22. However, a police officer is not

14

required to investigate all potentially exculpatory claims prior to making an arrest. *See* Baker v. McCollan, 443 U.S. 137, 145-46 (1979). "To hold otherwise would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me.'" Mazda v. City of New York, 1999 WL 1289623, at *5 (E.D.N.Y. July 13, 1999) (*quoting* Criss v. City of Kent, 867 F.2d 259, 263 (6th Cir. 1988)). Lineberger cannot successfully attack the jury's verdict simply by pointing to another theory the police could have pursued.

In attacking the sufficiency of the evidence, Lineberger also argues that the prosecution should not have introduced photographs as identification evidence and that the photographs were "bad." King Decl., Ex. H at 25. The decision to admit or exclude evidence typically does not create an issue for habeas review because, in general, state evidentiary rulings do not implicate the federal constitution. *See* Crawford v. Artuz, 165 F. Supp. 2d 627, 635 (S.D.N.Y. 2001). "A state court's erroneous ruling on an issue of state evidentiary law rises to a federal constitutional violation only if the error deprived the defendant of a *fundamentally fair* trial." Id. (*emphasis in original*); Taylor v. Curry, 708 F.2d 886, 891 (1983). Under New York law, "photographs are admissible if they tend 'to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered.'" People v. Wood, 79 N.Y.2d 958, 960 (1992) (*quoting* People v. Pobliner, 32 N.Y.2d 356, 369 (1973) (*internal citations excluded*)); *see* Simpson v. Portuondo, 2002 WL 31045862, at *6 (S.D.N.Y. June 4, 2002). Photographic evidence must be a fair representation of the person, objects, or places reproduced, and the matter portrayed must be identified and relevant to the controversy. People v. Corbett, 418 N.Y.S.2d 699, 703-04 (App. Div. 4th Dep't 1979). Here, the photographs were properly admitted under state law. They were an accurate depiction

15

of Lineberger as he appeared on the day of his arrest, and were authenticated by Officer Jones. Tr. at 95-97. Furthermore, Lineberger admits that his defense counsel "didn't lodge any objection to the admission of the photographs" during trial. King Decl., Ex. H at 23. Lineberger fails to demonstrate that the admission of the photographs deprived him of a fundamentally fair trial. Because he has not met the "heavy burden" he would have to show to overturn the verdict, Martinez, 54 F.3d at 1042, Lineberger's claim that the evidence presented against him at trial was insufficient should be **DENIED**.

**6.     Sentencing *In Absentia* and Without Counsel**

The Sixth Amendment right to counsel is a qualified right. United States v. Paone, 782 F.2d 386, 392 (2d Cir. 1986). "Forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." Faretta v. California, 422 U.S. 806, 817 (1975). The right to be present is also not absolute, and may be waived, either explicitly or by the defendant's conduct. Illinois v. Allen, 397 U.S. 337, 342-43 (1970). If a defendant refuses to appear and the court is unable to locate him, a trial judge may determine that a defendant has waived his right to be present, and proceed in his absence. *See* McGann v. Kelly, 891 F. Supp. 128, 134 (S.D.N.Y. 1995); Smith v. Kelly, 664 F. Supp. 131, 135 (S.D.N.Y. 1987). A defendant can also lose his right to be present "if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Allen, 397 U.S. at 343. "A defendant may be sentenced in absentia whether or not the court has specifically advised him of his right to be present at sentencing." Dixon v. Miller, 56 F. Supp. 2d 289, 301 (E.D.N.Y. July 14, 1999); *see also* United

States *ex rel*. Rosemond v. Smith, 1994 WL 119108, at *2 (S.D.N.Y. Apr. 4, 1994); Wingate v. Scully, 764 F. Supp. 319, 320 (S.D.N.Y. 1991).

Lineberger claims that his sentencing *in absentia* deprived him of his due process rights, but the trial court proceeded *in absentia* only after Lineberger displayed abusive behavior towards his attorney and refused to appear for sentencing. Lineberger also argues the court did not administer a sufficient inquiry before allowing him to proceed *pro se*. The Court of Appeals affirmed the Appellate Division's decision holding that the trial court was faced with an "impossible choice," and Lineberger had forfeited his right to be present. Lineberger, 98 N.Y.2d at 663. This decision was neither contrary to, nor involved an unreasonable application of clearly established Federal law. *See* Williams, 529 U.S. at 412. In addition, AEDPA requires that federal habeas courts apply a "presumption of correctness" to a state court's factual findings. 28 U.S.C. § 2254(e)(1). Given this presumption, Lineberger's claim is without merit, and should be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Lineberger's petition for a writ of habeas corpus be **DENIED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Kimba Wood, 500 Pearl Street, Room 1610, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.

*See* Thomas v. Arn, 474 U.S. 140, 150 (1985); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: November 1, 2007**
**New York, New York**

**Respectfully Submitted,**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**

Petitioner, *pro se*
Charles Lineberger, #98-A-1949
Clinton Correctional Facility
P.O. Box 2001-Hospital Il-D-5
Dannemora, New York 12929

Counsel for Respondent
Luke Martland
Assistant Attorney General
120 Broadway, 22nd Floor
New York, New York 10271

18